IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CISCO SYSTEMS, INC.,                    )
                                        )
                    Plaintiff,          )      C.A. No. 10-687-GMS
                                        )
            v.                          )      **PUBLIC VERSION**
                                        )
MOSAID TECHNOLOGIES INC.,               )
                                        )
                    Defendant.          )

## MOSAID TECHNOLOGIES INC.'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION FOR LEAVE TO FILE ITS SECOND AMENDED COMPLAINT

OF COUNSEL

Brian A. Rosenthal
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006-1101

James R. Ferguson
Steven Yovits
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637

Anup K. Misra
MAYER BROWN LLP
1675 Broadway
New York, NY 10019-5820

Dated:  November 5, 2012
Public Version: November 9, 2012

Philip A. Rovner
Jonathan A. Choa
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Defendant*
*MOSAID Technologies Inc.*

## TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................................... 1

II.     PROCEDURAL HISTORY ......................................................................................... 2

    A.    The Pending Litigation ..................................................................................... 2

    B.    The ITC Settlement Agreement ........................................................................ 3

    C.    Cisco's Proposed RICO Allegations and Related Claims .................................. 4

III.    LEGAL STANDARD ................................................................................................. 6

IV.     THE ITC SETTLEMENT AGREEMENT BARS CISCO'S RICO CLAIM ................. 6

V.      THE ITC SETTLEMENT AGREEMENT BARS CISCO'S CBPC CLAIM .............. 12

VI.     CONCLUSION ......................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

CASES

*Agere Sys. Guardian Corp. v. Proxim, Inc.,*
 190 F. Supp. 2d 726 (D. Del. 2000) ................................................................................6

*Anderson v. Ayling,*
 396 F.3d 265 (3d Cir. 2005) ...............................................................................2, 6, 7

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ..........................................................................................6

*Associated General Contractors of California, Inc. v. California*
 *State Council of Carpenters,*
 459 U.S. 519 (1983) .........................................................................................11

*Augustine Medical, Inc. v. Progressive Dynamics,*
 194 F.3d 1367 (Fed. Cir. 1999) .............................................................................8, 9

*Bankers Trust Co. v. Rhoades,*
 859 F.2d 1096 (2d Cir. 1988) ................................................................................10

*Burlington Coat Factory Sec. Litig., In re*
 114 F.3d 1410 (3d Cir. 1997) .................................................................................6

*Californians for Disability Rights v. Mervyn's, LLC,*
 138 P.3d 207 (Cal. 2006)......................................................................................12

*Camiolo v. State Farm Fire & Cas. Co.,*
 334 F.3d 345 (3d Cir. 2003) ................................................................................8, 9

*FL Receivables Trust 2002-A v. Bagga,*
 2005 WL 563535 (E.D. Pa. Mar. 8, 2005) ..................................................................10

*Foman v. Davis,*
 371 U.S. 178 (1962) ........................................................................................2, 6

*Holmes v. Securities Investor Protection Corp.,*
 503 U.S. 258 (1992) .........................................................................................11

*Ketzner v. John Hancock Mut. Life Ins. Co.,*
 118 F. App'x 594 (3d Cir. 2004) ............................................................................12

*Kwikset Corp. v. Superior Court,*
 246 P.3d 877 (Cal. 2011)....................................................................................12

*LaBarbara v. Angel,*
  95 F. Supp. 2d 656 (E.D. Tex. 2000)...................................................................10

*Maio v. Aetna, Inc.,*
  221 F.3d 472 (3d Cir. 2000) ................................................................2, 6, 7

*Microsurgical Sys. v. Cooper Companies, Inc.,*
  797 F. Supp. 333 (D. Del. 1992) ...................................................................6

*Penn Mont Secs. v. Frucher,*
  502 F. Supp. 2d 443 (E.D. Pa. 2007)............................................................11

*Pension Benefit Guar. Corp. v. White Consol. Indus.,*
  998 F.2d 1192 (3d Cir. 1993) .......................................................................4

*PNC Bank, N.A. v. PPL Electric Utilities Corp.,*
  189 F. App'x 101 (3d Cir. 2006)..................................................................12

*Walter v. Palisades Collection, LLC,*
  480 F. Supp. 2d 797 (D. Penn. 2007) ..........................................................10

**STATUTES**

California Business and Professions Code Section 17200 ("CBPC").........................4, 12

**RULES**

Fed. R. Civ. P. 12(b)(6) .....................................................................................6

Fed. R. Civ. P. 15...........................................................................................5, 7

Fed. R. Civ. P. 15(a) .........................................................................................6

## I.    INTRODUCTION

Cisco Systems, Inc. ("Cisco") has moved for leave to file a Second Amended Complaint ("SAC") that seeks to transform a straightforward patent case into ██████████ RICO litigation based solely on ████████████████ in a wholly separate—and recently settled—administrative proceeding. ██████████████████████████████

██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████

While the proposed complaint displays numerous factual and legal deficiencies, it also suffers from an even more fundamental flaw: It is directly contrary to the parties' March 2012 Settlement Agreement ("ITC Settlement Agreement") that bars Cisco from seeking the very damages it now seeks in its RICO claim.

In particular, Cisco's proposed complaint asserts that the alleged RICO conspiracy caused an "injury-in-fact" by forcing Cisco to incur attorneys' fees and other costs in the ITC Investigation. (SAC, ¶¶ 305-07). Yet, just eight months ago, in March 2012, Cisco agreed to release MOSAID from *"any and all claims for costs and fees incurred in litigating the ITC Investigation,* including but not limited to attorneys' fees, costs, and other expenses incurred by [Cisco] in connection with the ITC Investigation." (Exhibit A, ITC Settlement Agreement, ¶ 3) (emphasis added) (Exhibit A).

By virtue of this unambiguous and unqualified release, Cisco cannot assert any of its ITC-related expenses as the alleged "injury-in-fact" for its proposed RICO claims—and therefore Cisco has no standing to assert such claims against MOSAID. In a long line of decisions, the Third Circuit has held that a plaintiff does not have standing to pursue a civil

RICO claim unless it can allege and prove an "actual monetary loss" resulting from the alleged violations. *See, e.g., Anderson v. Ayling*, 396 F.3d 265, 271 (3d Cir. 2005); *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000).

Accordingly, because the ITC Settlement Agreement precludes Cisco from satisfying the Third Circuit's RICO standing requirements, the filing of the proposed complaint would be "futile" under the Supreme Court's decision in *Foman v. Davis*, 371 U.S. 178, 182 (1962). For this reason alone, Cisco's motion for leave to file the Second Amended Complaint should be denied.

## II.   PROCEDURAL HISTORY

### A.   The Pending Litigation

MOSAID is an intellectual property company that develops and licenses semiconductor and communications technologies. (D.I. 23). In early 2009, MOSAID acquired a portfolio of patents from ▓▓▓▓ including the ten patents at issue in this litigation (the ▓▓▓▓ Patents"). (*Id.*). The ▓▓▓ Patents cover a range of inventions, including certain Power over Ethernet ("PoE") and Voice over IP ("VoIP") technologies. (*Id.*)

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ On August 13, 2010, Cisco filed a complaint in this Court, seeking a declaratory judgment of non-infringement and invalidity of the ▓▓▓ Patents, even though Mosaid had not indicated any intention to file suit ▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (D.I. 2).

On December 2, 2010, Cisco filed its First Amended Complaint (D.I. 19), and on December 15, 2010, MOSAID answered, including counterclaims for infringement of the

███████ Patents. (D.I. 23). On January 10, 2011, Cisco filed its answer to MOSAID's counterclaims. (D.I. 25).

### B. The ITC Settlement Agreement

On May 18, 2011, MOSAID instituted ITC Investigation No. 337-TA-778 against Cisco to prevent the importation of certain of Cisco's infringing products into the United States. (SAC, ¶ 27). The ITC Investigation involved six of the ten patents at issue in the present litigation. (*Id.*). During that Investigation, the ALJ construed 65 terms in a 214-page opinion, deciding virtually all issues but one in favor of Mosaid. (ITC Investigation Order No. 21 (Feb. 14, 2012)). However, very shortly before trial, the ALJ made several rulings against Mosaid on the issue of "domestic industry," which is a requirement specific to ITC investigations. (SAC, ¶ 28).

On the eve of trial, the parties entered into a confidential ITC Settlement Agreement on March 13, 2012 and filed a joint motion to terminate the proceeding. (Exhibit A). The parties each acknowledged that they voluntarily entered into the ITC Settlement Agreement ███████



The parties further agreed to release each other from "any and all claims" for costs and fees incurred in connection with the ITC Investigation:

> **Legal Fees and Costs.** Each Party to this Agreement releases each and every one of the other Parties from ***any and all claims for***

3

*costs and fees* incurred in litigating the ITC Investigation, including but not limited to ***attorneys' fees, costs, and other expenses*** incurred by that Party in connection with the ITC Investigation.

(*Id.*, ¶ 3) (emphasis added).[1]

### C.    Cisco's Proposed RICO Allegations and Related Claims

Cisco's proposed Second Amended Complaint adds two new counts alleging statutory violations. First, in proposed Count XXI, the complaint asserts that MOSAID, ███████████ ████████████ ██████violated the RICO statute ████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████ (SAC, ¶¶ 39-137). The proposed complaint further alleges that the ████████████████ acts constituted violations of the federal criminal law and thus serve as "predicate acts" for purposes of an alleged RICO conspiracy. (*Id.*, ¶¶ 269-89). Finally, the proposed complaint asserts that ███████████████████████████████████████ caused an "actual monetary loss" to Cisco by (1) causing Cisco to incur "substantial fees and costs" in defending against MOSAID's claims in the ITC Investigation; (2) causing Cisco's employees to devote "significant time and resources" in gathering documents and preparing for depositions in the ITC investigation; and (3) causing Cisco to incur similar costs in unspecified ways in "the instant litigation." (*Id.*, ¶¶ 305-08).

Second, in proposed Count XXII, the complaint asserts that the same alleged conduct also violated the California Business and Professions Code Section 17200 ("CBPC"). (*Id.*, ¶¶ 309-18). In this count, the complaint makes no new allegations of an "actual monetary loss,"

---

[1] For purposes of Cisco's Motion, the Court may consider documents such as the Motion and its exhibits, the Amended Complaint and its exhibits and authentic documents upon which Cisco's claims are based. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). ████████████████████████████████████████ ████████████████████████████████████

but instead simply incorporates by reference the same allegations relating to fees, costs and employee-related expenses incurred in the ITC Investigation and this action. (*Id.*, ¶ 309).

Thus, Cisco's proposed complaint seeks to exponentially expand the scope of the current patent dispute by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (2) adding ▮▮▮▮▮▮ ▮▮ factual allegations relating to a separate proceeding before the ITC (SAC, ¶¶ 1-15); ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In addition, Cisco's proposed complaint raises another issue that Cisco inexplicably ignores in its Rule 15 memorandum—the preclusive effect of the parties' March 13, 2012 ITC Settlement Agreement. (Exhibit A). As shown below, in that Agreement, Cisco expressly released MOSAID from "any and all claims" for any fees, costs or other expenses incurred in the ITC Investigation—and this release directly bars the RICO claims set forth in Cisco's proposed complaint.[2]

---

[2] This opposition is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and it addresses only the narrow question of whether the parties' ITC Settlement Agreement bars Cisco's RICO claims in this case. However, as noted earlier, Cisco's proposed RICO complaint suffers from numerous factual and legal deficiencies. Accordingly, if Cisco succeeds in its motion, MOSAID ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ will file Rule 12(b)(6) motions challenging all of the legal insufficiencies of the complaint.

5

### III.   LEGAL STANDARD

Leave of court is required for a party to amend its Complaint once its opponent has filed an answer. Fed. R. Civ. P. 15(a). Leave should not be granted if, among other things, the proposed amendment would be futile or has been brought in bad faith. *Foman*, 371 U.S. at 182; *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Accordingly, leave to amend is by no means "automatic," and "the liberal policy of granting leave to amend must not be interpreted to permit amendment without restraint." *Agere Sys. Guardian Corp. v. Proxim, Inc.*, 190 F. Supp. 2d 726, 732 (D. Del. 2000) (quoting *Microsurgical Sys. v. Cooper Companies, Inc.*, 797 F. Supp. 333, 336 (D. Del. 1992)).

Efforts to amend are futile, and thus should be precluded, when the amended claim lacks a legitimate basis for relief. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'"). The Third Circuit has held that this general proposition holds true with regard to RICO claims in particular. *Maio*, 221 F.3d at 483 (holding that a RICO plaintiff must demonstrate "concrete financial loss"); *Anderson v. Ayling*, 396 F.3d 265, 271 (3d Cir. 2005) (internal citation omitted).

### IV.   THE ITC SETTLEMENT AGREEMENT BARS CISCO'S RICO CLAIM

Cisco's RICO claim is futile because, as set forth in Count XXI, the ITC Settlement Agreement bars Cisco from recovering as damages its fees, costs and expenses in the ITC investigation. As a result, Cisco does not have standing to make its RICO claim against MOSAID. In the Third Circuit, it is well-settled that a plaintiff has standing to pursue a civil

RICO claim only if the plaintiff can allege and prove "a *concrete financial loss*" resulting from the alleged violations. *Anderson*, 396 F.3d at 271; *Maio*, 221 F.3d at 483 (emphasis added). Under this rule, a RICO plaintiff must allege and prove an "actual *monetary* loss" (and not a "mere injury to a valuable intangible property interest") in order to establish a RICO claim. *Anderson*, 396 F.3d at 271.

In this case, Cisco's proposed RICO claim bases its allegations of "actual monetary loss" on the fees, costs and employee-related expenses that Cisco allegedly incurred in the ITC Investigation. (SAC, ¶¶ 305-07). For example, in the ▓▓▓▓▓▓▓▓ the proposed complaint asserts that the defendants' alleged conduct caused Cisco to incur "substantial fees and costs" in the ITC Investigation, including the "significant time and resources" that Cisco employees were required to devote in preparing for depositions and "gathering and providing documentary and written evidence" in that proceeding. (SAC, ¶ 307).

Yet, as noted earlier, on March 13, 2012, in the ITC Settlement Agreement, Cisco expressly released MOSAID from "any and all claims" for those same *"fees, costs and other expenses,"* including "attorneys' fees" and employee-related "expenses." (Exhibit A, ITC Settlement Agreement, ¶ 3) (emphasis added). As a direct result of this unqualified release, Cisco cannot assert any of its ITC-related "fees and costs" and other expenses as the alleged "injury" for its RICO claims—and therefore Cisco has no standing to assert such claims against MOSAID.

Inexplicably, in its Rule 15 motion and supporting memorandum, Cisco makes *no effort* to address the ITC Settlement Agreement, or to explain precisely how Cisco can bring its RICO claims in light of an unqualified release it provided only eight months ago. Indeed, Cisco does

7

not even mention the settlement agreement except in a footnote that cryptically refers to "an agreement at the time the ITC investigation was terminated." (Cisco Mem., at 14 n.7).

Cisco's failure to even address the ITC Settlement Agreement is especially striking in light of the extensive "meet and confer" communications that preceded the filing of Cisco's motion. (*See* Exhibits B, C, D and E.). In those communications, MOSAID repeatedly stressed that under Third Circuit law the ITC Settlement Agreement deprived Cisco of standing to make its proposed RICO claims. (Exhibit B, 8/21/12 and Exhibit D, 10/5/12 J. Ferguson letters to M. De Vries). In its primary response, Cisco made the remarkable assertion that the release did not apply to ITC-related "fees, costs and expenses" that are alleged as "RICO *damages*." (Exhibit C, 9/25/12 M. De Vries letter to J. Ferguson,).

Needless to say, this argument is contrary to the plain language of the Agreement, which creates no special exception for fees and costs alleged as "RICO damages." Instead, the Agreement releases both parties from "*any and all* claims" for "attorneys' fees, costs, and other expenses" incurred in litigating the ITC Investigation—with no limitation or qualification of any kind.

Such broad and unqualified language defines the scope of the release. The courts have repeatedly held that the "effect of a release is to be determined by the ordinary meaning of its language." *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 361 (3d Cir. 2003) (internal citations omitted); *see also Augustine Medical, Inc. v. Progressive Dynamics*, 194 F.3d 1367, 1373 (Fed. Cir. 1999). This principle applies with special force when a party agrees to broad and unqualified language, even though the party is fully aware of the major facts underlying its later-asserted claim.

For example, in *Camiolo,* the Third Circuit found that a broad release set forth in a settlement agreement barred the plaintiff from asserting a RICO claim against an insurance company based on the handling of an insurance claim. 334 F.3d at 361-62. The court noted that the release discharged the defendant from "any and all actions, causes of action, claims, demands or damages," with no "limiting language" or "exceptions" of any kind. *Id.* The court further noted that the plaintiff (who had been represented by counsel in negotiating the release) agreed to the broad language, even though the plaintiff had been well aware of key facts underlying his later-asserted cause of action. *Id.* The Third Circuit therefore concluded that the plaintiff knowingly intended to adopt the broad release set forth in the agreement. *Id.*

Similarly, in *Augustine Medical,* the Federal Circuit held that a settlement agreement precluded the patentees from prosecuting a subsequent patent infringement action when the agreement released any claims that the patentees "have, have had or may have" against the defendant. 194 F.3d. at 1373. The Federal Circuit stressed that the patentees had "clear knowledge at the time of the Settlement Agreement" that the defendant was selling products that allegedly infringed the relevant patent. *Id.* Yet, notwithstanding this knowledge, the patentees did not "expressly reserve" the option of pursuing future patent claims, but instead agreed to the unqualified language of the release. *Id.* The Federal Circuit therefore concluded that the patentees intended to adopt the broad language barring future claims. *Id.*

The same logic applies here. When Cisco entered into the March 13, 2012 ITC Settlement Agreement, Cisco was well aware of all of the major facts underlying its current RICO allegations. Yet, despite this "clear knowledge"—and despite being "fully advised by legal counsel with respect to the rights and obligations under this Agreement"—Cisco did not "expressly reserve" a RICO damages claim based on its ITC-related fees, costs and employee-

related expenses. Instead, Cisco agreed to release MOSAID from "any and all claims" based on those same "fees, costs and expenses." On these facts, Cisco cannot evade the plain meaning of the language it expressly agreed to in the ITC Settlement Agreement.

In addition, the relevant ITC rules contain no provision for recovery of fees and costs, as there is in district court litigation. As such, the only plausible reading of the parties' mutual release is that it covered any independent cause of action seeking to recover as damages any fees, costs or other expenses associated with the ITC Investigation. Indeed, the plain language of the ITC Settlement Agreement reveals that such a release was the consideration for termination of the ITC Investigation.

As an alternative argument in the "meet and confer" process, Cisco also asserted that the ITC Settlement Agreement does not apply because some of the alleged RICO damages relate to fees and costs that Cisco will incur in *this* action. (SAC, ¶ 307). This argument also fails.

First, the argument is circular, as it tries to create RICO standing based on future fees and costs that Cisco will incur in the *current litigation*. The courts have repeatedly held that a party cannot create RICO standing based on indefinite, contingent, or future fees or costs, especially fees or costs incurred in the underlying litigation. *Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 805 (D. Penn. 2007). *See also Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1106 (2d Cir. 1988) (holding that the plaintiff could not recover future legal fees, because those injuries had not yet accrued); *FL Receivables Trust 2002-A v. Bagga*, 2005 WL 563535, at *4 (E.D. Pa. Mar. 8, 2005) (dismissing the plaintiff's RICO claim for lack of standing because the alleged injury was contingent on a still-pending collection action against the borrowers); *LaBarbara v. Angel*, 95 F. Supp. 2d 656, 663 (E.D. Tex. 2000) (holding that

10

plaintiffs lacked standing because "a civil RICO cause of action does not accrue until the amount of damages becomes clear and definite"). This principle applies with special force when the alleged RICO "victim" made the decision to initiate the litigation in the first place,

███████████████████████████████████████

Second, the proposed complaint contains no *specific* factual allegations establishing a causal link between the alleged conduct in the ITC Investigation and any fees or costs that Cisco will incur in *this* litigation. To the extent the proposed complaint makes any detailed allegations of a causal link between the alleged predicate acts and an "actual monetary loss," it does so only as to the alleged costs that Cisco incurred in the ITC Investigation—███████

███████████████████████████████████████████

████████████████████ (SAC, ¶ 308). By contrast, the proposed complaint sets forth no specific causal link between the alleged "predicate acts" and the costs that Cisco will supposedly incur in the pending litigation. ██████████████████████████

████████████████████████████████████████████

████████████████████ (*See, e.g., id.,* ¶¶ 307-08).

Such conclusory assertions are insufficient to establish that the alleged predicate acts in the ITC Investigation are the "proximate cause" of Cisco's fees and costs in this action. *See, e.g., Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 262 (1992); *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 533 n.25 (1983)); *Penn Mont Secs. v. Frucher,* 502 F. Supp. 2d 443, 467-68 (E.D. Pa. 2007) (finding that legal fees that are not proximately caused by any predicate act are not "injury" for purposes of RICO standing). For this reason as well, Cisco cannot establish RICO standing based on costs allegedly incurred in the current litigation.

Accordingly, because the ITC Settlement Agreement deprives Cisco of standing to pursue its RICO claims, Cisco's motion for leave to file the claims should be denied as futile. *See e.g., PNC Bank, N.A. v. PPL Electric Utilities Corp.*, 189 F. App'x 101, 104 (3d Cir. 2006) (affirming the district court's denial of a motion to amend to add a counterclaim because the defendant lacked standing to bring that new counterclaim); *Ketzner v. John Hancock Mut. Life Ins. Co.*, 118 F. App'x 594, 601 (3d Cir. 2004) (affirming the district court's decision to deny a motion to amend to add a RICO claim because "the situation was ill suited to a RICO claim").

## V.     THE ITC SETTLEMENT AGREEMENT BARS CISCO'S CBPC CLAIM

In its proposed complaint, Cisco also alleges that MOSAID ███████████████ ████████ violated the California Business and Professions Code ("CBPC") based on the same alleged conduct in the ITC Investigation.  (SAC, ¶¶ 309-318).  These claims are also futile for the same reason as the RICO claims.

Under California law, a party has standing to bring a CBPC § 17200 claim only if that party "has suffered *injury in fact and has lost money or property* as a result of . . . unfair competition."  CBPC § 17204 (emphasis added); *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 884 (Cal. 2011) ("private standing is limited to any 'person who has suffered injury in fact and has lost money or property' as a result of unfair competition (§ 17204, as amended by Prop. 64, as approved by voters, Gen. Elec. (Nov. 2, 2004) § 3; see *Californians for Disability Rights v. Mervyn's, LLC,* 138 P.3d 207 (Cal. 2006)).").

In this case, Cisco's CBPC claims make no specific allegation of an "injury-in-fact" based on "lost money or property," other than a vague and passing reference to "unnecessary litigation expenses."  (SAC, ¶ 317).  However, as shown above, in the ITC Settlement

12

Agreement, Cisco released MOSAID from any and all claims for those costs and fees.  (Exhibit A, ITC Settlement Agreement, ¶ 3).

As a result, Cisco cannot establish standing for the CBPC claims, and its motion for leave to file such claims should be denied as futile.

## VI.    CONCLUSION

For the foregoing reasons, MOSAID respectfully requests that the Court deny Cisco's Motion for leave to file its Second Amended Complaint.

POTTER ANDERSON & CORROON LLP

OF COUNSEL

Brian A. Rosenthal
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006-1101

James R. Ferguson
Steven Yovits
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637

Anup K. Misra
MAYER BROWN LLP
1675 Broadway
New York, NY 10019-5820

Dated:  November 5, 2012
1081821

By: */s/ Philip A. Rovner*
     Philip A. Rovner
     Jonathan A. Choa
     Hercules Plaza
     P.O. Box 951
     Wilmington, DE 19899
     (302) 984-6000
     provner@potteranderson.com
     jchoa@potteranderson.com

*Attorneys for Defendant*
*MOSAID Technologies Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that, on November 9, 2012, the within

document was electronically filed with the Clerk of the Court using CM-ECF which will send

notification to the registered attorneys of record that the document has been filed and is available

for viewing and downloading.

I further certify that on November 9, 2012 the within document was electronically

mailed to the following persons:

> Jack B. Blumenfeld, Esq.
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE 19899
> jblumenfeld@mnat.com

Eric R. Lamison, Esq.
Kirkland & Ellis LLP
555 California Street
San Francisco, CA 94104
Eric.lamison@kirkland.com

Michael W. DeVries, Esq.
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, CA 90071
Michael.devries@kirkland.com

Elizabeth A. Cutri, Esq.
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Elizabeth.cutri@kirkland.colm

Steven Cherny, Esq.
Brian Paul Gearing, Esq.
Jordan N. Malz, Esq.
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Steven.cherny@kirkland.com
Brian.gearing@kirkland.com
Jordan.malz@kirkland.com

John M. Desmarais, P.C.
Desmarais LLP
230 Park Avenue
New York, NY 10169
jdesmarais@desmaraisllp.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

# EXHIBIT A

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT B

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

August 21, 2012

James R. Ferguson
Direct Tel +1 312 701 7282
Direct Fax +1 312 706 8421
jferguson@mayerbrown.com

VIA E-MAIL

Michael De Vries
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, CA 90071
(Michael.devries@kirkland.com)

Re:   **Cisco Systems, Inc. v. Mosaid Technologies,
       Inc., Case No. 10-687-GMS**

Dear Michael:

In response to your August 14, 2012 email, MOSAID does not consent to the filing of the Second Amended Complaint, which contains new substantive claims having no factual or legal basis. Indeed, if Cisco were to file the proposed complaint, Cisco would breach at least three separate legal provisions and incur liability on each of those grounds.

First, Cisco does not have standing to make its baseless RICO claim against MOSAID. In the Third Circuit, it is well-settled that a plaintiff has standing to pursue a civil RICO claim only if it can prove "a *concrete financial loss*" resulting from the alleged violations. *Anderson v. Ayling*, 396 F.3d 265, 271 (3d Cir. 2005); *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (emphasis added). *See also* Cal. Bus. & Prof. Code §17204 (a private party can bring a § 17200 claim only if it "has suffered injury in fact and has *lost money or property* as a result of such unfair competition") (emphasis added).

In this case, the Second Amended Complaint makes no allegations of "concrete financial loss" other than the fees and expenses that Cisco allegedly incurred in connection with the ITC Investigation. In particular, in the "Injury" section, the proposed complaint asserts only that the alleged acts caused Cisco to incur various "unnecessary and significant" fees and costs in connection with the ITC investigation. (SAC, ¶¶ 270-72).

Yet, just five months ago, in a March 13, 2012 Settlement Agreement, Cisco released MOSAID from any liability for *those same fees and costs*. In particular, in the Settlement Agreement, Cisco expressly agreed that it would not make any claim against MOSAID for the recovery of any fees or expenses relating to the ITC Investigation:

> **Legal Fees and Costs.** Each Party to this Agreement releases each and every one of the other Parties from *any and all claims* for costs and fees incurred in litigating the ITC Investigation, including but not limited to attorneys' fees, costs, and other

Mayer Brown LLP operates in combination with other Mayer Brown entities with offices in Europe and Asia
and is associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Mayer Brown LLP

Michael De Vries
August 21, 2012
Page 2

expenses incurred by that Party in connection with the ITC
Investigation.

(Settlement Agreement, ¶ 3) (emphasis added). In the same document, Cisco stipulated that it
had been "fully advised" by its counsel as to the "intent and legal effect of this Agreement"—
including, of course, the legal effect of releasing MOSAID from any liability for the fees and
costs associated with the ITC Investigation. (*Id.* at ¶ 6).

As a direct consequence of this unambiguous and unqualified release, Cisco cannot assert
any of its ITC-related "expenses" as the alleged "injury" for its defamatory RICO claims—and
therefore Cisco has no standing to assert such groundless claims against MOSAID. On this basis
alone (and without regard to the many other legal and factual deficiencies in the draft
counterclaim), Cisco's decision to file the draft complaint will subject Cisco to sanctions for
knowingly filing a legally baseless pleading. Fed.R.Civ.P. 11; *Ford Motor Co. v. Summit Motor
Products, Inc.,* 930 F.2d 277, 289 (3d Cir. 1991).

Second, if Cisco files the draft complaint, it will be a direct breach of the March 13, 2012
Settlement Agreement. As noted above, the Agreement expressly provides that Cisco releases
MOSAID from all liability for any fees or costs relating to the ITC Investigation. The
Agreement further directs each party to "undertake *any required steps* and/or execute *any further
documentation* necessary to carry out the terms and conditions of this Agreement"—including,
of course, the terms and conditions of the release set forth in Paragraph 3. (Settlement
Agreement, ¶ 6.8). Consequently, if Cisco were to file a new complaint seeking recovery of the
very "fees and costs" it released in the Settlement Agreement, the filing would breach both the
substantive Release and the contractual requirement to take "all required steps" to carry out the
"terms and conditions" of the Release. As a result, the filing of the draft complaint will subject
Cisco to liability under the Settlement Agreement for all damages that MOSAID incurs as a
result of the defamatory allegations.

Third, if Cisco files the proposed complaint, it will also breach the covenant of good faith
that is implied in every contract, including settlement agreements. *Anderson v. Wachovia Mortg.
Corp.,* 497 F.Supp.2d 572, 581 (D. Del. 2007); *Leonard v. Univ. of Delaware,* No. Civ. A.
96-360–GMS, 2000 WL 1456295, at *16 (D. Del. Sept. 19, 2000). *Fitzgerald v. Cantor,* No.
C.A. 16297-NC., 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998). This covenant requires the
parties to a contract to refrain from any course of conduct that prevents the other party from
receiving the fruits of the bargain. *See, e.g., Dunlap v. State Farm Fire & Cas. Co.,* 878 A.2d
434, 442 (Del. 2005). Under any standard, it would be a breach of good faith for Cisco and its
attorneys to settle one litigation by agreeing to release MOSAID from specific claims and
damages, and then—just five months later—turn around and sue MOSAID in a new litigation for
the same claims and damages. Accordingly, this breach will similarly subject Cisco to liability
for all of the damages that MOSAID incurs as a result of the defamatory allegations.

This letter will place Cisco on notice that the new allegations in its proposed complaint
are objectively baseless as a matter of law. If, notwithstanding the above, Cisco persists in its

Mayer Brown LLP

Michael De Vries
August 21, 2012
Page 3

intention to file the Second Amended Complaint, MOSAID will pursue all available remedies, including sanctions and claims for money damages based on Cisco's breach of its legal duties.

If you have any questions or need additional information, please don't hesitate to contact Brian Rosenthal or me at your earliest convenience.

Very truly yours,

James R. Ferguson

# EXHIBIT C

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

333 South Hope Street
Los Angeles, CA  90071

Michael W. De Vries
To Call Writer Directly:
(213) 680-8590
michael.devries@kirkland.com

(213) 680-8400

www.kirkland.com

Facsimile:
(213) 680-8500
Dir. Fax:  (213) 808-8032

September 25, 2012

<u>VIA E-MAIL</u>

James R. Ferguson, Esq.
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606

Re:    *Cisco Systems, Inc. v. Mosaid Technologies, Inc., Case No. 10-687-GMS*

Dear Mr. Ferguson:

We write in response to your August 21, 2012 letter regarding Cisco Systems, Inc.'s ("Cisco") proposed second supplemental and amended complaint (the "Second Supplemental and Amended Complaint"), a version of which was first provided to MOSAID Technologies, Inc. ("MOSAID") on July 25, 2012. Contrary to the allegations in your letter, the new claims in Cisco's Second Supplemental and Amended Complaint are well grounded in law and fact, and it is the threats contained in your letter – which are highly reminiscent of MOSAID's improper threats to seek and pursue sanctions against Cisco and its counsel if Cisco did not agree to sweep MOSAID's illegal conduct under the rug – that are legally baseless.

Tellingly, MOSAID does not deny that it is has engaged in a pattern of unlawful racketeering activity, including by providing improper inducements to multiple fact witnesses and manipulating relevant evidence, in an improper effort to impose undue burdens on Cisco and extract royalties from Cisco to which MOSAID is not entitled. Nor could it. The Administrative Law Judge presiding over the International Trade Commission investigation initiated by MOSAID (the "ITC Investigation") expressly, and repeatedly, found that MOSAID engaged in unlawful activity:

- "The Administrative Law Judge finds that the {    } Extension and {    } Agreement were provided to {    } and {    } for an improper purpose, that is, to requite them with 'goodwill' for subpoenas they were obliged to respond to under the law." (ITC Investigation No. 337-TA-778, Public Version Order No. 25 at 3)

- "***MOSAID has engaged in a wrongdoing*** that resulted in the sweeping exclusion of evidence" (ITC Investigation No. 337-TA-778, Public Version Order No. 45 at 3) (emphasis added)

Hong Kong     London     Los Angeles     Munich     New York     Palo Alto     San Francisco     Shanghai     Washington, D.C.

# KIRKLAND & ELLIS LLP

September 25, 2012
Page 2

MOSAID also does not deny that its illegal conduct has caused substantial and concrete injuries to Cisco. Indeed, MOSAID even concedes that Cisco's proposed Second Supplemental and Amended Complaint alleges that Cisco suffered concrete financial loss caused by MOSAID's unlawful racketeering activity. *See* August 21, 2012 letter at 1 ("[T]he Second Amended Complaint makes no allegations of 'concrete financial loss' *other than*...") (emphasis added).

Indeed, MOSAID's sole argument is that Cisco should have no recourse for MOSAID's pattern of engaging in unlawful racketeering activities due to paragraph 3 of the March 13, 2012 agreement between MOSAID, on the one hand, and Cisco and its affiliates, on the other (the "Agreement"). MOSAID's argument is wrong for numerous reasons.

First and foremost, MOSAID mischaracterizes paragraph 3 of the Agreement in an effort to avoid taking responsibility for its unlawful activities. MOSAID states that the Agreement "release[s] MOSAID from specific claims *and damages*." *See* August 21, 2012 letter at 2 (emphasis added). In fact, paragraph 3 of the Agreement never mentions "damages" at all and only purports to release certain types of claims, i.e., "claims for costs and fees incurred in litigating the ITC Investigation." *See* Agreement at ¶3. Cisco is not asserting a claim for costs and fees; rather, Cisco is asserting claims for RICO violations and violations of the California Business and Professions Code. Simply put, the Agreement does not bar the claims for relief contained in Cisco's proposed Second Supplemental and Amended Complaint and MOSAID's argument that it does is not supported by the actual language of the Agreement.

Further, MOSAID's letter also fails to acknowledge Cisco's allegations that MOSAID's racketeering activities have directly and proximately caused a number of concrete injuries, including financial losses incurred by Cisco in litigating the District Court action (including but not limited to *after* the Agreement was executed) and financial losses associated with the significant impact of MOSAID's actions on Cisco's employees and resources, none of which is addressed by MOSAID's letter.

For these and other reasons, paragraph 3 of the Agreement does not bar the claims in Cisco's Second Supplemental and Amended Complaint. Cisco undeniably has standing to bring its RICO claim. As set forth in great detail in Cisco's Second Supplemental and Amended Complaint, Cisco has sustained — and continues to sustain — substantial, concrete financial losses from MOSAID's well-documented unlawful activities. The Agreement does not deprive Cisco of standing to bring its RICO claim, nor does it bar the claims contained in Cisco's Second Supplemental and Amended Complaint.[1] For at least these same reasons, filing the Second

---

[1]    Indeed, MOSAID's letter does not address Cisco's declaratory judgment claim based on MOSAID's unclean hands at all, and barely mentions Cisco's claim based on California Business & Professions Code Section 17200. MOSAID's letter briefly mentions California Business & Professions Code Section 17204 ("Section 17204") in passing, without explanation. *See* August 21, 2012 letter at 1. The allegations of injury in the Second Supplemental and Amended Complaint are unquestionably sufficient to satisfy the requirements of that

# KIRKLAND & ELLIS LLP

September 25, 2012
Page 3

Supplemental and Amended Complaint does not constitute a breach of the Agreement or of any covenant of good faith and fair dealing.

Because Cisco's claims are well grounded in law and fact, and are not barred by paragraph 3 of the Agreement, Cisco intends to proceed with seeking to file its Second Supplemental and Amended Complaint to address MOSAID's unlawful conduct.[2]   Cisco similarly will seek leave to supplement and amend its answer to MOSAID's counterclaims to assert the defense of unclean hands.   Attached please find current versions of Cisco's Second Supplemental and Amended Complaint and First Supplemental and Amended Answer to MOSAID's Counterclaims.   Please let us know by no later than 5:00 p.m. Eastern Time on September 27, 2012 if MOSAID consents to the filing of the attached version of the Second Supplemental and Amended Complaint, which names MOSAID, Phil Shaer, and John Lindgren as defendants, and the First Supplemental and Amended Answer.   If we do not hear from you by then, we will assume that MOSAID intends to maintain its opposition to Cisco's filing of the Second Supplemental and Amended Complaint and First Supplemental and Amended Answer, and will move forward on that basis.

Sincerely,

/s/ Michael W. De Vries

Michael W. De Vries

---

section. See, e.g., Allergan, Inc. v. Athena Cosmetics, Inc., 640 F.3d 1377, 1383 (Fed. Cir. 2011); Kwikset Corp. v. Superior Court of Orange County, 246 P.3d 877, 886 (Cal. 2011); Overstock.com, Inc. v. Gradient Analytics, Inc., 61 Cal.Rptr.3d 29 (Cal. Ct. App. 2007).   Indeed, "the availability of injunctive relief under 17204 is not contingent on a party's ability to plead an injury compensable by restitution." Allergan, 640 F.3d at 1382; Kwikset, 246 P.3d at 894-95.   Just as it is not a bar to Cisco's RICO claim, Paragraph 3 of the Agreement is not a bar to either of these claims, which seek injunctive, equitable, and other relief designed to address MOSAID's pattern of unlawful conduct.

[2]   We also note that MOSAID continues its improper, and baseless, threats to seek sanctions against Cisco for seeking to address MOSAID's unlawful conduct by way of the Second Supplemental and Amended Complaint. As noted above, and as well documented in the record of the ITC proceedings, MOSAID repeatedly threatened to pursue baseless sanctions against Cisco and its counsel in connection with the ITC Investigation in an improper effort to convince Cisco to sweep MOSAID's unlawful conduct under the rug after MOSAID's efforts to hide its unlawful conduct were unsuccessful.   To the extent that MOSAID intends to continue to pursue that strategy, that will provide yet more evidence that MOSAID is attempting to extort money from Cisco through its unlawful and improper conduct.

# EXHIBIT D

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT E

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

333 South Hope Street
Los Angeles, California 90071

| Michael W. De Vries | | |
| --- | --- | --- |
| To Call Writer Directly: | (213) 680-8400 | Facsimile: |
| (213) 680-8590 | | (213) 680-8500 |
| michael.devries@kirkland.com | www.kirkland.com | |

October 9, 2012

James R. Ferguson, Esq.
Mayer Brown
71 South Wacker Drive
Chicago, Illinois 60606-4637
(jferguson@mayerbrown.com)

      Re:   Cisco Systems, Inc. v. MOSAID Technologies, Inc.
              Case No. 10-687-GMS

Dear Mr. Ferguson:

      We write on behalf of our client Cisco Systems, Inc. ("Cisco") in response to your October 5, 2012 letter, which you sent on behalf of your client MOSAID Technologies, Inc. ("MOSAID").

      Your letter confirms that MOSAID does not consent to the filing of Cisco's proposed Second Supplemental and Amended Complaint or to the filing of Cisco's proposed First Supplemental and Amended Answer. We disagree with your characterizations of the parties' agreement, Cisco's allegations and positions, and the law. We also note that your letter does not address numerous aspects of Cisco's proposed pleadings and our prior correspondence.

      Because it is clear that MOSAID has no intention of agreeing to Cisco's proposed pleadings, continuing to debate these issues in correspondence is not a fruitful exercise. Accordingly, Cisco will proceed with filing its motion and proposed pleadings.

      Sincerely,

      */s/ Michael W. De Vries*

      Michael W. De Vries

cc:   Steven Cherny, Esq.
       Eric Lamison, Esq.
       John Desmarais, Esq.
       Jack Blumenfeld, Esq.

Chicago    Hong Kong    London    Munich    New York    Palo Alto    San Francisco    Shanghai    Washington, D.C.